UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES STEEL CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>ALGOMA STEEL INC.,<br><br>    Defendant. | Civil Action No. 2:25-cv-01549 |

**PLAINTIFF UNITED STATES STEEL CORPORATION'S
MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION</u>**

Andrew R. Stanton (Pa. Bar No. 93409)
Jeffrey Baltruzak (Pa. Bar No. 318156)
Christopher J. Pottmeyer (Pa. Bar No. 325078)
Joseph W. Ferari (Pa. Bar No. 334341)
JONES DAY
500 Grant St., Suite 4500
Pittsburgh, PA 15219
Telephone: (412) 391-3939
astanton@jonesday.com
jbaltruzak@jonesday.com
cpottmeyer@jonesday.com
jferari@jonesday.com

*Counsel for Plaintiff
United States Steel Corporation*

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

I.    U. S. Steel and Algoma Agree to Arbitration in the Contract. ......................................... 2

II.    Algoma Repudiates the Contract. ..................................................................................... 3

LEGAL STANDARD................................................................................................................... 4

ARGUMENT ................................................................................................................................ 5

I.    The Parties Have A Valid Agreement to Arbitrate. .......................................................... 5

II.    The Parties Have Delegated the Second Question to Arbitration, and In Any Event, the Parties' Dispute Falls Within the Arbitration Agreement. ............................... 6

III.    Algoma Cannot Avoid Arbitration By Calling Its Defense "Equitable." ......................... 7

    A.    Algoma Raises Purely Legal—Not Equitable—Issues........................................... 7

    B.    Equitable Relief Language Is an Aid to Arbitration, Not a Carve-Out to Avoid It. .................................................................................................................. 9

IV.    This Action Should Be Stayed Pending Completion of the Parties' Arbitration. ............. 10

CONCLUSION................................................................................................................................ 11

## EXHIBITS

Exhibit

Statement of Claim, Ontario Superior Court of Justice .................................................................. A

Demand for Arbitration, American Arbitration Association .......................................................... B

**INTRODUCTION**

In 2020, United States Steel Corporation ("U. S. Steel") and Algoma Steel Inc. ("Algoma") entered into a straightforward contract where Algoma agreed to buy millions of tons of iron ore pellets from U. S. Steel. That contract runs through 2027, is governed by Pennsylvania law, and requires that "any and all disputes" be resolved "solely and exclusively" by binding arbitration in Pittsburgh, Pennsylvania under the AAA's Commercial Rules. Late last month, Algoma breached and repudiated the agreement when it unilaterally ended the contract and refused to accept any further shipments of iron ore pellets from U. S. Steel. Immediately, Algoma filed suit in an Ontario court, seeking a declaration that the agreement "is no longer binding and enforceable," while conveniently failing to mention the contract's arbitration and choice-of-law provisions. In response, U. S. Steel commenced arbitration as required by the contract and brought this action to enforce the parties' agreement to arbitrate this dispute in Pittsburgh, under Pennsylvania law. U. S. Steel now moves to compel arbitration.

This is not a complicated issue. Binding precedent lays out just two questions for the Court: (1) whether the parties agreed to arbitrate; (2) whether the dispute falls within the scope of the parties' agreement. The answer to the first question is easy: there is no dispute that the parties entered into the contract, and the contract says that arbitration is the sole and exclusive place for "any and all disputes." The Court need not reach the second question because, under controlling caselaw, the parties agreed that the AAA's Commercial Rules apply and therefore delegated the second question to arbitration. In other words, once the Court finds the parties entered into the contract, it should grant U. S. Steel's motion and send the parties to arbitration. In any event, the parties' dispute falls squarely within the parties' arbitration agreement, which has the maximum possible scope ("any and all disputes").

Algoma does not want to be in arbitration and purports to rely on language in the contract that allows a party "to obtain injunctive or other equitable relief" in court. According to Algoma, a "declaration" that the contract "is no longer binding and enforceable" falls within this language. Algoma is wrong, and courts have repeatedly rejected these types of gymnastics because they would eviscerate arbitration provisions. The Court should compel arbitration and stay the instant proceedings pending resolution of that arbitration.

## BACKGROUND

### I.  U. S. Steel and Algoma Agree to Arbitration in the Contract.

On May 13, 2020, U. S. Steel and Algoma executed a Pellet Sale and Purchase Contract (the "Contract"), obligating U. S. Steel to sell, and Algoma to purchase, millions of tons of iron ore pellets on an annual basis. *See* ECF 13-1 ("Contract," filed under seal). The Contract is governed by Pennsylvania law. *Id*. § 18. The original term of the Contract ran through January 2025, *id.*, § 2; the parties later extended it to January 2027. ECF 13-3.

In the Contract, the parties agreed that that "***any and all disputes*** arising under [the Contract] or related to the subject matter hereof shall be ***solely and exclusively resolved by arbitration***." Contract § 17(b) (emphasis added); *see also id*. § 17(a)(i)-(iii) ("any dispute, controversy or claim relating to the subject matter or interpretation of the [Contract] . . . shall be settled exclusively and finally by arbitration"). The parties further agreed that arbitration "shall be conducted pursuant to the Commercial Arbitration Rules of the American Arbitration Association ('AAA') with all proceedings taking place in Pittsburgh, Pennsylvania." *Id.* The parties also agreed that "any arbitral award rendered shall be final, non-appealable, and binding against the Parties." *Id.* The arbitration provision also requires three neutral arbitrators. *Id.*

In a separate subsection, the Contract permits the parties to "bring judicial proceedings in a court of competent jurisdiction to obtain injunctive or other equitable relief at any time before, during or after the pendency of any negotiations or arbitration proceedings." *Id.*, § 17(c).

The parties amended the Contract three times: on October 7, 2020, August 23, 2023, and September 8, 2023. ECF 13-2, 13-3, 13-4. Each amendment re-affirmed provisions that were not changed. ECF 13-2§ 3; ECF 13-3 § 11; ECF 13-4 § 3. In short, as late as September 2023, Algoma confirmed its agreement with U. S. Steel to resolve "any and all disputes" under the Contract "solely and exclusively" by arbitration. Contract § 17(b); ECF 13-4 § 3.

## II. Algoma Repudiates the Contract.

In late September 2025, Algoma refused a shipment of iron ore pellets from U. S. Steel. ECF 1, Compl. ¶ 20. Shortly thereafter, on September 29, 2025, Algoma wrote a letter to U.S. Steel that purported to unilaterally end the Contract. *See* ECF 13-5. Algoma acknowledged that "[b]oth parties performed under this [Contract] for over five years." *Id.* at 1. Algoma claimed, however, that recent tariffs imposed on Canadian steel exports to the United States made Algoma's finished steel products uncompetitive, and that, as a result, it no longer has use for U. S. Steel's pellets. *See id*. Algoma made its position clear that the Contract "is no longer binding and enforceable and that the parties' obligations under the [Contract] are at an end." *Id.* at 2.

That same day, Algoma filed a Statement of Claim in Ontario court. *See* Ex. A ("Statement"). The Statement confirms that the parties entered into the Contract on May 13, 2020, that it runs through January 2027, and that it "provided that Algoma would purchase from US Steel, during a specified period, a set quantity of iron ore pellets . . . ." *Id.* ¶ 7; *see also id.* ¶ 8 (confirming the dates of the three amendments). Like Algoma's September 29 letter, the Statement asserts that Algoma's steel products are no longer competitive due to tariffs and that "the parties' obligations under the [Contract] are at an end and that the [Contract] is no longer binding and enforceable."

3

*Id.* ¶¶ 13-18, 27.  Algoma's Statement, however, omits any references to the parties' arbitration provision and does not mention that Pennsylvania law governs the Contract.  *Compare* Ex. A *with* Contract §§ 17(b), 18.  Algoma did not attach the Contract to its Statement.  *See* Ex. A.

On October 1, 2025, Algoma confirmed that it "cannot accept any additional shipments of pellets."  *See* ECF 13-6.  On October 6, 2025 U. S. Steel filed an arbitration demand with the AAA.  *See* Ex. B.  On October 8, 2025, Algoma served its Statement filed in Ontario on U. S. Steel.

## LEGAL STANDARD

The Federal Arbitration Act (FAA) applies here because the Contract and the parties' commercial relationship have a clear "interstate nexus."  *Gov't of V.I. v. United Indus. Workers, N.A.*, 169 F.3d 172, 176 (3d Cir. 1999) ("the FAA's reach coincides with that of the Commerce Clause").  FAA Section 2 mandates that arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  FAA Section 2 "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" putting "arbitration agreements on an equal footing with other contracts," and requiring enforcement "according to their terms."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).  There is a "strong presumption in favor of arbitration, and doubts 'concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983)).

The Rule 12 standard for a motion to dismiss applies to the instant motion to compel arbitration.  *See Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 324 (3d Cir. 2022) (where "arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), the [FAA] would favor resolving a motion to compel arbitration under a motion to

dismiss standard without the inherent delay of discovery" (internal quotation marks omitted)); *see also Liptak v. Acc. Inventory Mgt., LLC*, 2021 WL 650514, at *2 (W.D. Pa. Feb. 19, 2021) (Horan, J.) (applying Rule 12 standard and compelling arbitration where it was "apparent on the face of the complaint and the documents relied upon in the complaint that a valid arbitration agreement exists"). The Rule 12 standard applies even if the plaintiff is the party moving to compel arbitration. *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 317–18 (W.D. Pa. 2020).

## ARGUMENT

"A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (compelling arbitration). We address each question in turn.

### I.     The Parties Have A Valid Agreement to Arbitrate.

"[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). That question turns on Pennsylvania law, which requires an agreement to show: (1) the parties' mutual intent to be bound; (2) sufficiently definite terms; and (3) consideration. *E.g.*, *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) (federal court looks to the "relevant state law on the formation of contracts to determine if there is a valid arbitration agreement under the FAA" and finding parties agreed to arbitration under Pennsylvania law).

The parties are large, sophisticated steel companies who entered into a formal written agreement concerning the supply of millions of tons of iron ore pellets for hundreds of millions of dollars. *See generally* Contract. Both parties have filed court papers stating that they entered into the Contract, amended it three times, and performed it for years. *See* Compl. ¶¶ 13–19; Ex. A ¶¶ 7–11. The face of the Contract reflects the parties' mutual and unequivocal intent that any dispute

5

"shall be settled exclusively and finally by arbitration," § 17(a)(iii); sets forth a precise mechanism for the parties to follow, *see id.*, § 17(a)–(b); and demonstrates their mutual agreement to abide by those terms, which is adequate consideration. *Blair*, 283 F.3d at 603 ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."). Indisputably, the parties agreed to the Contract's arbitration provision.

## II. The Parties Have Delegated the Second Question to Arbitration, and In Any Event, the Parties' Dispute Falls Within the Arbitration Agreement.

Given there is a valid agreement to arbitrate, the second (and final) question is whether the parties' dispute falls within the scope of their arbitration agreement. *Trippe Mfg.*, 401 F.3d at 532. That question is for arbitration, not the Court, because the parties incorporated the AAA's Commercial Rules into their arbitration provision. *See Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020) (finding incorporation of AAA's Commercial Rules in an arbitration agreement is "clear and unmistakable evidence" that parties delegated to the arbitrator the question of whether a dispute fell within the scope of the arbitration provision); *see also Henry Schein*, 586 U.S. at 69 (a court "may not decide an arbitrability question that the parties have delegated to an arbitrator").

U. S. Steel and Algoma agreed that "any and all disputes arising under [the Contract] or related to [its] subject matter … shall be solely and exclusively resolved by arbitration." Contract § 17(b). The parties further agreed that arbitration "shall be conducted" pursuant to the AAA's "Commercial Arbitration Rules." *Id.* Commercial Arbitration Rule 7(a), in turn, states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including … the arbitrability of any claim or counterclaim." That provision "is about as 'clear and unmistakable' as language can get." *Richardson*, 811 Fed. App'x at 103 (citation omitted). Accordingly, the arbitrator should decide whether the parties' dispute falls within the arbitration provision.

6

Even if this Court, not the arbitrator, should decide whether the dispute falls within the arbitration clause, the answer is clearly yes. The Contract requires "any and all disputes" under, or related to, the Contract to be "solely and exclusively resolved" by arbitration. Contract § 17(b). Simply put, it is impossible to agree to a broader scope than the parties did here, and there can be no question that the parties' complete dispute—Algoma's breach, U. S. Steel's damages, and any defenses Algoma may have—falls within the arbitration provision. *See Continental Materials, Inc. v. Veer Plastics Private, Ltd.*, 2023 WL 2795345, at *4 (E.D. Pa. Apr. 5, 2023) (plain language of contract controls whether arbitration agreement covers the dispute). And if the arbitration provision is ambiguous—it isn't—"[a]ny doubts concerning the scope of an arbitration agreement must be resolved in favor of arbitration." *Id.* at *3 (internal citation omitted).

### III.     Algoma Cannot Avoid Arbitration By Calling Its Defense "Equitable."

The parties have a straightforward contract dispute involving the usual questions: Did Algoma breach the Contract? If so, what are U. S. Steel's damages? And does Algoma have any defenses to its breach? Algoma claims it does not have to arbitrate these issues because it is entitled to seek "equitable" relief in court, specifically a declaration "that the [Contract] is no longer binding and enforceable and that the parties obligations under the [Contract] are at an end." ECF 13-5 at 2; *see also* Ex. A, ¶ 27 (seeking declaration that "obligations under the [Contract] are at an end and that the [Contract] is no longer binding and enforceable"). Consistent with the FAA's strong presumption in favor of arbitration, courts consistently reject such pleading gymnastics designed to gut arbitration provisions. This Court should do the same.

#### A.     Algoma Raises Purely Legal—Not Equitable—Issues.

Algoma purports to seek "equitable relief" in the form of a declaration that the Contract is over. For starters, declaratory relief is neither inherently legal nor inherently equitable. *Twp. of Haddon v. Royal Ins. Co. of Am.*, 929 F. Supp. 774, 778 (D.N.J. 1996) (citing *Owens–Illinois, Inc.*

7

*v. Lake Shore Land Co., Inc*., 610 F.2d 1185, 1189 (3d Cir. 1979)). To assess the legal versus equitable nature of declaratory relief, courts ask "in what kind of suit the claim would have come to court if there were no declaratory judgment remedy." *AstenJohnson, Inc. v. Columbia Cas. Co*., 562 F.3d 213, 223 (3d Cir. 2009) (citation omitted). "[T]he fact that the action is in form a declaratory judgment case should not obscure the essential nature of the action." *Id.* at 224 (citation omitted). In other words, if the declaratory action "is essentially an inverted law suit—an action brought by one who would have been a defendant at common law"—then it is legal in nature. *Id.* at 223; *see Owens–Illinois*, 610 F.2d at 1189 (similar).

"[T]he Third Circuit [has] found that a declaratory judgment claim based on a breach of contract [is] not equitable in nature." *Nowak v. Pa. Pro. Soccer, LLC*, 2012 WL 4459775, at *2 (E.D. Pa. Sept. 26, 2012) (citing *AstenJohnson*, 562 F.3d at 224); *AstenJohnson*, 562 F.3d at 226 (declaratory judgment claim based on a contract is "clearly" a legal claim). *Nowak* considered a motion to compel arbitration and is right on point. There, the parties agreed to an arbitration provision that applied to "any controversy" related to their agreement, as well as language that allowed either party to "seek[] equitable relief from a court of competent jurisdiction." *Id.* at *1. The plaintiff sought a declaration that the defendant did not satisfy the conditions precedent to terminate him. *Id.* Applying *AstenJohnson*, the court found that "if there was no declaratory judgment remedy, the plaintiff would have brought a claim for breach of contract, which is a claim that sounds in law, not equity." *Id.* at *2. "Accordingly," the plaintiff's "declaratory judgment action [did] not fall under the exception to the arbitration clause for equitable relief." *Id.*

The rule of *AstenJohnson* and *Nowak* makes sense. If it were otherwise, the non-breaching party could avoid arbitration by seeking "equitable relief" in the form of a declaration that the other party "breached the contract" or that it "owes millions in damages." Likewise, the breaching party could ask for a declaration that it "did not breach the contract." That would turn the

8

arbitration clause on its head: it would apply to zero disputes, rather than "any and all disputes" as the parties agreed. At bottom, no matter how Algoma labels its defense—whether equitable or otherwise—this dispute hinges solely on the parties' rights and obligations under the Contract and fits squarely within the requirement to arbitrate "any and all disputes."

> B.     <u>Equitable Relief Language Is an Aid to Arbitration, Not a Carve-Out to Avoid It.</u>

Algoma's position is, implicitly, that the "equitable relief" provision carves out an exception to the arbitration provision, which "solely and exclusively" requires arbitration of "any and all disputes." Algoma is wrong. Courts have held that an "equitable relief provision does not 'carveout' any claims from the arbitration agreement, but rather permits parties to seek equitable relief in aid of arbitration." *Continental Materials,* 2023 WL 2795345, at *4; *see also GateGuard, Inc. v. MVI Sys. LLC*, 2021 WL 4443256, at *6 (S.D.N.Y. Sept. 28, 2021) (equitable relief provision "simply confirms an already extant, independent legal right to make injunctive relief … available to the parties in aid of arbitration") (citations omitted).

*Continental* is instructive because it considered language nearly identical to the Contract's:

| *Continental* at *1 | Contract § 17(b), (c). |
|---|---|
| "Any dispute, controversy or claim between the parties … shall be settled by arbitration." | "[A]ny and all disputes … shall be solely and exclusively resolved by arbitration." |
| "Notwithstanding the foregoing, a Party may seek specific performance . . . or any other equitable relief in a court of competent jurisdiction." | "Notwithstanding the foregoing . . . the Parties shall have the right to bring judicial proceedings in a court of competent jurisdiction to obtain injunctive or other equitable relief at any time before, during or after the pendency of any negotiation or arbitration proceedings hereunder." |

The *Continental* court found that reading the equitable-relief language to be an aid to arbitration (and not a carve out) "permits the entire agreement to be read together, without conflicts." *Id.* at *4. In contrast, carving out any request for equitable relief from the arbitration provision "would

9

create a carveout so broad that it would render the rest of the arbitration agreement void, as it would permit parties to bring any and all claims before a court so long as they include a request for equitable relief." *Id.* (explaining that such a construction would be "contrary to principles of contract interpretation and to the parties evidenced intent to send disputes to arbitration").

Other plain language confirms this reading. The Contract send all "claims" to arbitration, as opposed to equitable "relief" that can go to court. Contract § 17(a) (defining "Dispute" as "any dispute, controversy, or claim"). A "claim" is not the same as "relief." Equitable-relief language can only be "a carve-out [to an arbitration clause] when the provision says that all 'claims' or 'actions' seeking equitable relief are exempted from arbitration." *GateGuard*, 2021 WL 4443256, at *6-8 (collecting authorities). Where, as here, that "language is lacking," *id.*, an equitable-relief provision does not "transform[] arbitrable claims into nonarbitrable ones depending on the form of relief prayed for." *Bolden v. DG TRC Mgmt.*, 2019 WL 2119622, at *5 (S.D.N.Y. May 15, 2019) (citation omitted); *SAE Int'l v. Int'l Aerospace Quality Grp.*, 2025 WL 2457234, at *5 n.3 (W.D. Pa. Aug. 26, 2025) (doubting that an equitable-relief provision serves as a carve-out).

The other recognized purpose of such equitable-relief provisions is to "preserve or to restore the status quo until the arbitrator has an opportunity to resolve the matter." *Specialty Bakeries, Inc. v. RobHal, Inc.*, 961 F. Supp. 822, 828 (E.D. Pa. 1997). Such "limited judicial intervention" ensures that arbitration agreements, "favored under federal law" are "not eviscerated" or become "a hollow formality." *Id.* at 828 (citations omitted). In sum, there is no conflict between the arbitration and equitable-relief provisions; rather, the latter aids and reinforces the former.

IV.   **This Action Should Be Stayed Pending Completion of the Parties' Arbitration.**

The FAA requires the Court to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 474 (2024) (requiring stay, not dismissal, pending arbitration under Section 3 of the FAA).

10

## **CONCLUSION**

For the foregoing reasons, U. S. Steel's motion to compel arbitration should be granted and this action stayed pending completion of that arbitration.

Dated: October 15, 2025

Respectfully submitted,

*/s/ Andrew R. Stanton*
Andrew R. Stanton (Pa. Bar No. 93409)
Jeffrey Baltruzak (Pa. Bar No. 318156)
Christopher J. Pottmeyer (Pa. Bar No. 325078)
Joseph W. Ferari (Pa. Bar No. 334341)
JONES DAY
500 Grant St., Suite 4500
Pittsburgh, PA 15219
Telephone: (412) 391-3939
astanton@jonesday.com
jbaltruzak@jonesday.com
cpottmeyer@jonesday.com
jferari@jonesday.com

*Counsel for Plaintiff*
*United States Steel Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of October, 2025, a true and correct copy of this Memorandum of Law in Support of U. S. Steel's Motion to Compel Arbitration was filed and served on counsel of record via the United States District Court for the Western District of Pennsylvania's CM/ECF system. Notice of this filing also will be sent via e-mail to the following entities:

Jennifer Roach
Kip Bollin
Caitlin Thomas
Thompson Hine LLP
127 Public Square
Cleveland, OH 44114
Jennifer.Roach@ThompsonHine.com
Kip.Bollin@thompsonhine.com
Caitlin.Thomas@thompsonhine.com

*Counsel for Defendant Algoma Steel Inc.*

Respectfully submitted,

*/s/ Andrew R. Stanton*
Andrew R. Stanton
*Counsel for Plaintiff*
*United States Steel Corporation*