# EXHIBIT A

Case 2:25-cv-01549-MJH    Document 16-1    Filed 10/15/25    Page 2 of 12

Electronically issued / Délivré par voie électronique : 29-Sep-2025
Sault Ste. Marie Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-25-00029987-0000

**Exhibit A**



Court File No.:

# *ONTARIO*
## SUPERIOR COURT OF JUSTICE

**ALGOMA STEEL, INC.**

Plaintiff

- and -

**UNITED STATES STEEL CORPORATION**

Defendant

## STATEMENT OF CLAIM

TO THE DEFENDANT:

A LEGAL PROCEEDING HAS BEEN COMMENCED AGAINST YOU by the Plaintiff. The Claim made against you is set out in the following pages.

IF YOU WISH TO DEFEND THIS PROCEEDING, you or an Ontario lawyer acting for you must prepare a Statement of Defence in Form 18A prescribed by the Rules of Civil Procedure, serve it on the Plaintiff's lawyer or, where the Plaintiff does not have a lawyer, serve it on the Plaintiff, and file it, with proof of service, in this court office, WITHIN TWENTY DAYS after this Statement of Claim is served on you, if you are served in Ontario.

If you are served in another province or territory of Canada or in the United States of America, the period for serving and filing your Statement of Defence is forty days. If you are served outside Canada and the United States of America, the period is sixty days.

Instead of serving and filing a Statement of Defence, you may serve and file a Notice of Intent to Defend in Form 18B prescribed by the Rules of Civil Procedure. This will entitle you to ten more days within which to serve and file your Statement of Defence.

IF YOU FAIL TO DEFEND THIS PROCEEDING, JUDGMENT MAY BE GIVEN AGAINST YOU IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU. IF YOU WISH TO DEFEND THIS PROCEEDING BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LOCAL LEGAL AID OFFICE.

IF YOU PAY THE PLAINTIFF'S CLAIM, and $5,000 for costs, within the time for serving and filing your Statement of Defence, you may move to have this proceeding dismissed

Case 2:25-cv-01549-MJH   Document 16-1   Filed 10/15/25   Page 3 of 12

Electronically issued / Délivré par voie électronique : 29-Sep-2025
Sault Ste. Marie Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-25-00029987-0000

by the court. If you believe the amount claimed for costs is excessive, you may pay the Plaintiff's claim and $1,000.00 for costs and have the costs assessed by the court.

TAKE NOTICE: THIS ACTION WILL AUTOMATICALLY BE DISMISSED if it has not been set down for trial or terminated by any means within five (5) years after the action was commenced unless otherwise ordered by the court.

Date:                                       Issued by _____
                                                              Local registrar

                                            Address of       426 Queen St. E.
                                            court office:    Sault Ste. Marie, Ontario
                                                             P6A 6W2

**TO:** United States Steel Corporation
         600 Grant Street, Room 1812
         Pittsburgh, PA, USA  15219

Case 2:25-cv-01549-MJH   Document 16-1   Filed 10/15/25   Page 4 of 12

Electronically issued / Délivré par voie électronique : 29-Sep-2025
Sault Ste. Marie Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-25-00029987-0000

## CLAIM

1. The plaintiff, Algoma Steel, Inc. ("**Algoma**"), claims against the defendant, United States Steel Corporation ("**US Steel**"), for:

   (a) a declaration that Algoma and US Steel are no longer bound by the terms of the Pellet Contract (defined below), and that the Pellet Contract is no longer enforceable against the parties;

   (b) its costs of this proceeding; and

   (c) such further and other equitable relief as this Honourable Court may deem just.

**Background**

2. The plaintiff, Algoma, is a corporation incorporated in British Columbia pursuant to the *Business Corporations Act*, S.B.C. 2002, c. 57, as amended. Algoma's business includes the production and sale of various steel products. Its manufacturing facilities along with its administrative offices are located in Sault Ste. Marie, Ontario.

3. Algoma's predominant steel manufacturing process involves smelting iron ore with coke in a high-temperature blast furnace to manufacture flat rolled steel products, predominantly in the form of hot rolled coils and discrete plate.

4. For the fiscal year ending March 31, 2024, Algoma produced and shipped a total of 2,085,465 tons of flat rolled steel products, with 64% of this volume sold and exported to the United States. The majority of Algoma's customers for its flat rolled steel products are located in the United States, with over 60% of Algoma's 2024 revenues from such products being derived from sales to U.S. customers.

Case 2:25-cv-01549-MJH   Document 16-1   Filed 10/15/25   Page 5 of 12

Electronically issued / Délivré par voie électronique : 29-Sep-2025
Sault Ste. Marie Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-25-00029987-0000

5. Algoma purchases various raw materials, including iron ore pellets, for use in its blast furnace to manufacture hot rolled steel products.

6. The defendant, US Steel, is a corporation incorporated pursuant to the laws of the State of Delaware. Its business includes iron ore production and the sale of iron ore pellets to third party producers such as Algoma, and also includes the production and sale of steel products in the United States.

**The Pellet Sale and Purchase Contract**

7. On or about May 13, 2020, Algoma and US Steel entered into a "Pellet Sale and Purchase Contract", which was reduced to writing and signed by the parties, with an effective date of May 15, 2020. The Pellet Sale and Purchase Contract was initially effective until January 15, 2025, but has since been extended until January 2027. Broadly speaking, the contract provided that Algoma would purchase from US Steel, during a specified period, a set quantity of iron ore pellets for use in Algoma's blast furnace operations.

8. The contract has been amended from time to time. Those amendments have changed various terms of the original contract, including the quantity of iron ore pellets to be purchased by Algoma, and the time period within which the purchases are to be made. The amendments to the contract, each of which was reduced to writing and signed by the parties, were as follows:

    (a)    first amendment, made effective as of October 7, 2020;

    (b)    second amendment, made effective as of August 23, 2023; and

Case 2:25-cv-01549-MJH   Document 16-1   Filed 10/15/25   Page 6 of 12

Electronically issued / Délivré par voie électronique : 29-Sep-2025
Sault Ste. Marie Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-25-00029987-0000

(c) third amendment, made effective as of September 8, 2023. (The Pellet Sale and Purchase Contract together with all of its amendments is referred to as the "**Pellet Contract**".)

9. Each of the original contract and the three amendments was entered into in Ontario. In each instance, Algoma was the first party to sign the form of agreement. Algoma then sent the document that it had signed to US Steel by email, following which US Steel signed the document, and then emailed the fully executed document back to Algoma. As noted above, Algoma is located in Ontario and, in each instance, Algoma received the email with the fully executed agreement in Ontario.

10. The Pellet Contract provides that Algoma shall purchase approximately 2.5 million tons of iron ore pellets during the "2025 Shipping Season", and approximately 2 million tons of iron ore pellets during the "2026 Shipping Season" (as defined in the Pellet Contract).

11. The Pellet Contract provides that the price to be paid by Algoma for the iron ore pellets shall reflect, to a certain degree, changes in the benchmark price for U.S. midwest hot-rolled coil steel.

12. When the Pellet Contract was entered into and throughout its life, it was understood by Algoma and US Steel – indeed, it was the very foundation for the Pellet Contract – that the purpose for the iron ore pellets being supplied was for Algoma to use the pellets in its blast furnace in its manufacturing process for hot-rolled steel, most of which would be sold to U.S. customers. The parties further understood that Algoma had no other use for iron ore pellets. The parties also understood that, without access to the U.S. market, Algoma's blast furnace operations would not be viable.

Case 2:25-cv-01549-MJH    Document 16-1    Filed 10/15/25    Page 7 of 12
Electronically issued / Délivré par voie électronique : 29-Sep-2025
Sault Ste. Marie Superior Court of Justice / Cour supérieure de justice
Court File No./N° du dossier du greffe : CV-25-00029987-0000

## U.S. Tariffs on Canadian Steel Fundamentally Undermine the Purpose, and Algoma's Ability to Perform, the Pellet Contract

13. Since his inauguration in January 2025, the President of the United States has issued various executive orders imposing tariffs on products imported from Canada; including tariffs under section 232 of the *Trade Expansion Act of 1962*.

14. Under these tariffs, the President imposed a 25% ad valorem tariff on all steel and aluminum articles and their derivatives, without exclusions. The tariffs were effective March 4, 2025, paused on March 6, 2025, and then reinstated March 12, 2025. On June 4, 2025, the tariffs were increased to 50% for all steel and aluminum imports to the United States.

15. Thus, at present, any steel product manufactured by Algoma in its blast furnace operations and imported into the United States will attract a 50% tariff.

16. The section 232 tariffs have caused unprecedented irreparable damage to Algoma's business. As known to US Steel at all material times, a very significant proportion of the steel produced by Algoma's blast furnace operations was sold in the United States. Over 60% of Algoma's 2024 sales went to U.S. customers. Since the imposition of the tariffs, the U.S. market for Algoma's steel products has collapsed, as the tariffs operate as a governmental restraint rendering Algoma's product uncompetitive with hot-rolled steel produced domestically in the United States.

17. Furthermore, on August 15, 2025, the U.S. Commerce Department expanded the list of goods subject to these 50% tariffs, adding 407 product categories of steel and aluminum "derivative" products – i.e., finished goods or intermediate products that contain steel. As a result of this change, many of Algoma's Canadian customers are also facing 50% tariffs on their

Case 2:25-cv-01549-MJH    Document 16-1    Filed 10/15/25    Page 8 of 12

Electronically issued / Délivré par voie électronique : 29-Sep-2025
Sault Ste. Marie Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-25-00029987-0000

derivative steel products. Because many Canadian manufacturers of steel-containing finished and intermediate products depend on access to the U.S. market, this has further exacerbated the already severe impact of the tariffs on Algoma's blast furnace operations, by further eroding demand for its products in Canada.

18. With access to the U.S. market effectively closed, Algoma's blast furnace operations have been rendered uneconomic and impracticable. It is well understood in the steel industry, including by US Steel, that the operation of a blast furnace cannot be viably scaled down or run at partial capacity. Once idled, a furnace requires costly and prolonged restart procedures and, when operated below approximately 50% of capacity, becomes both technically unstable and economically unsustainable. The continuous nature of blast furnace ironmaking, together with its high fixed costs and thermal requirements, makes partial utilization impracticable from both a financial and operational standpoint.

19. Having lost access to the U.S. market as a result of the tariffs, and with continued blast furnace operation rendered impracticable as a result, Algoma has had no alternative but to begin winding down its blast furnace operations. This is not a voluntary commercial choice, but the direct and unavoidable consequence of the governmental restraints that have foreclosed Algoma's direct and indirect access to the U.S. market.

20. Without continued blast furnace operations, Algoma has no use for iron ore pellets, including those supplied under the Pellet Contract.

21. While the United States previously imposed tariffs on Canadian steel imports in 2018, those tariffs were significantly lower than the current tariffs, and the expectations in that instance were that the tariffs were a *temporary* trade action intended to create negotiating leverage, rather

Case 2:25-cv-01549-MJH   Document 16-1   Filed 10/15/25   Page 9 of 12

Electronically issued / Délivré par voie électronique : 29-Sep-2025
Sault Ste. Marie Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-25-00029987-0000

than a *permanent* barrier, and that the tariffs would be removed without undue delay through trade negotiations. Consistent with those expectations, the trade dispute was resolved through bilateral discussions, and the tariffs were fully lifted in less than 12 months.

22. In the present case, the section 232 tariffs are more than double what was imposed in 2018 and are at a historic high. At the time the current tariffs were first imposed, the prevailing expectation – including on the part of Algoma – was that, consistent with the 2018 experience, the measures would be addressed and removed through trade negotiations without undue delay. However, by August 2025, it had become evident that the current tariffs were of a fundamentally different character and that the prospects of the tariffs being lifted or materially reduced in the foreseeable future were (and are) exceedingly remote.

## Declaration as to the Parties' Obligations and the Pellet Contract's Enforceability

23. The political and economic situation that has arisen – i.e., 50% tariffs on steel imports, with no likelihood of removal without undue delay – was not, and could not reasonably have been, foreseen by the parties at the time of contracting, or at any other relevant time, and was outside the control of the parties. Continued performance of the Pellet Contract in the face of such an unforeseeable and uncontrollable situation would result in a loss to Algoma that is severe and unjust.

24. At all relevant times, the parties contemplated, and their contractual relations were premised upon, the existence of a market in the United States for the steel products manufactured by Algoma's blast furnace operations. The purpose of the Pellet Contract was to supply iron ore pellets for use in Algoma's blast furnace operations to manufacture hot-rolled coil steel and plate steel, most of which would be sold in the United States.

Case 2:25-cv-01549-MJH   Document 16-1   Filed 10/15/25   Page 10 of 12

Electronically issued / Délivré par voie électronique : 29-Sep-2025
Sault Ste. Marie Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-25-00029987-0000

25. As a result of the tariffs, that foundational and mutually understood purpose of the Pellet Contract has been destroyed.

26. The governmental restraints imposed by the section 232 tariffs, which have effectively eliminated Algoma's access to the United States market and thereby necessitated Algoma's decision to wind down its blast furnace operations, have radically changed the obligations of the parties under the Pellet Contract from what had been originally contemplated.

27. It is appropriate for this Court to grant Algoma equitable relief and declare that the parties' obligations under the Pellet Contract are at an end and that the Pellet Contract is no longer binding and enforceable.

**Service Outside Ontario**

28. This claim may be served on US Steel outside Ontario pursuant to section 17.02(f)(i) of the *Rules of Civil Procedure*.

**Place of Trial**

29. Algoma proposes that this action be tried in the City of Sault Ste. Marie.

Case 2:25-cv-01549-MJH   Document 16-1   Filed 10/15/25   Page 11 of 12

Electronically issued / Délivré par voie électronique : 29-Sep-2025
Sault Ste. Marie Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-25-00029987-0000

September 29, 2025

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7

**Julie Rosenthal** LSO#: 41011G
jrosenthal@goodmans.ca

**Sarah Stothart** LSO#: 73068O
sstothart@goodmans.ca

**Tel:** 416.979.2211

**SPADAFORA JOHNSON LEPORE LLP**
747 Queen Street East, Suite 202
Sault Ste. Marie, ON  P6A 2A8

**Paul A. Johnson** LSO#: 55855G
pjohnson@sjl.law

**Tel:** 705.949.7790

Lawyers for the Plaintiff,
Algoma Steel, Inc.

Electronically issued / Délivré par voie électronique : 29-Sep-2025
Sault Ste. Marie Superior Court of Justice / Cour supérieure de justice

Court File No./N° du dossier du greffe : CV-25-00029987-0000

Court File No.

| ALGOMA STEEL, INC. | - and - | UNITED STATES STEEL CORPORATION |
|---|---|---|
| Plaintiff | | Defendant |

***ONTARIO*
SUPERIOR COURT OF JUSTICE**

Proceedings commenced at Sault Ste. Marie

**STATEMENT OF CLAIM**

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto, ON M5H 2S7

**Julie Rosenthal** LSO#: 41011G
jrosenthal@goodmans.ca

**Sarah Stothart** LSO#: 73068O
sstothart@goodmans.ca

**Tel:** 416.979.2211

**SPADAFORA JOHNSON LEPORE LLP**
747 Queen Street East, Suite 202
Sault Ste. Marie, ON P6A 2A8

**Paul A. Johnson** LSO#: 55855G
pjohnson@sjl.law

**Tel:** 705.949.7790

Lawyers for the Plaintiff, Algoma Steel, Inc.

1383-5012-3545.11