IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| UNITED STATES STEEL CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | 2:25-CV-01549-MJH |
| vs. | ) ) ) | |
| ALGOMA STEEL INC., | ) ) | |
| Defendant, | ) | |

OPINION

Plaintiff, United States Steel Corporation, brings the within action for declaratory judgment to compel arbitration or, in the alternative, for breach of contract arising out of Defendant, Algoma Steel, Inc.'s, alleged refusal to accept U.S. Steel's shipment of iron ore pellets.  (ECF No. 1)

U.S. Steel has moved to compel arbitration of the parties' dispute and to stay this matter pending the outcome of said arbitration.  (ECF No. 15).  In addition to challenging U.S. Steel's Motion to Compel Arbitration, Algoma has concurrently moved for dismissal, pursuant to Fed. R. Civ. P. 12(b)(2), asserting lack of personal jurisdiction, and in the alternative, for dismissal of Count I for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), or in the second alternative, for dismissal or stay based upon international comity. (ECF No. 36).  These matters are now ripe for decision.

Following consideration of Algoma's Motion to Dismiss (ECF No. 36), the respective briefs (ECF No. 37, 44, and 51), and for the following reasons, Algoma's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and Motion to Stay based upon international comity will be

denied, and Algoma's remaining Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will be denied as moot.

In addition, upon consideration of U.S. Steel's Motion to Compel Arbitration (ECF No. 15), the respective briefs (ECF Nos. 16, 39, and 43), and for the following reasons, U.S. Steel's Motion to Compel Arbitration will be granted.

## I.    Relevant Background

On May 13, 2020, U. S. Steel and Algoma executed a Pellet Sale and Purchase Contract (the "Contract"), obligating U. S. Steel to sell, and Algoma to purchase iron ore pellets on an annual basis. (ECF No. 13-1).   In late September 2025, Algoma refused a shipment of iron ore pellets from U. S. Steel. (ECF No. 1 at ¶ 20).  On September 29, 2025, Algoma filed a Claim in the Ontario Superior Court of Justice requesting:

(a) A declaration that Algoma and U.S. Steel are no longer bound by the terms of the [Contract], and that the [Contract] is no longer enforceable against the parties;

(b) its costs of its proceedings; and

(c) such further and equitable relief as [The Ontario Superior Court of Justice] may deem just.

(ECF No. 16-1 at p. 4). On October 6, 2025, U.S. Steel filed the instant action, seeking Declaratory relief confirming that the parties' dispute must be resolved by arbitration (Count I); Declaratory relief confirming that the Contract is binding and enforceable (Count II); and in the alternative, a claim for Breach of Contract (Count III).  The parties disagree as to whether this matter belongs in arbitration, and as to whether this Court, in the first instance, has personal jurisdiction over Algoma. In addition, Algoma argues that its Claim in the Ontario Superior Court of Justice, which was filed before this action, has precedence.

The Dispute Resolution section of the Contract (Section 17) provides in part as follows:

b) <u>Arbitration</u>. Subject to Section 17(c), the Parties hereby agree that any and all disputes arising under this Agreement or related to the subject matter hereof shall be solely and exclusively resolved by arbitration in the manner specified herein. The arbitration shall be conducted pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("AAA") with all proceedings taking place in Pittsburgh, Pennsylvania. The arbitration will be registered with the AAA only upon agreement of the Parties. The arbitration shall be conducted before a three (3) member arbitral panel to which each Party shall appoint one (1) neutral arbitrator and then those two (2) arbitrators shall select the third neutral arbitrator. All three members of the panel will be neutral arbitrators and no ex parte communications will take place between the Parties and the members of the arbitration panel. The fees and costs of the panel will be equally borne by the Parties. Each Party shall bear its own legal costs and fees of the arbitration. The Parties and the panel shall use their best efforts to resolve all disputes which are the subject of the arbitration within six (6) months from the filing of a demand for arbitration. Pending the issuance of an arbitral decision, the Parties shall continue their full and normal operations and obligations in accordance with this Agreement. The Parties consent and agree that any arbitral award rendered shall be final, non-appealable, and binding against the Parties, and may be enforced by any court of competent jurisdiction provided that such award shall be subject to the limitations set forth in Article 14.

c) <u>Equitable Relief</u>. Notwithstanding the foregoing provisions of this Article, the Parties shall have the right to bring judicial proceedings in a court of competent jurisdiction to obtain injunctive or other equitable relief at any time before, during or after the pendency of any negotiation or arbitration proceedings hereunder.

(ECF No. 13-1 at p. 14).

Section 18 of the Contract provides for Choice of Law as follows:

a) The Agreement shall be construed and enforced in accordance with, and governed by, the laws of the Commonwealth of Pennsylvania, without regard to its principles of conflict of laws and exclusive of any principles therein that would require the application of the United Nations Convention on Contracts for the International Sale of Goods ("CISG"). CISG shall not apply to this Agreement or to any other contractual relationships between the Parties to this Agreement.

*Id*. at pp. 14-15.

II.    **Discussion**

A. Motion to Dismiss for Lack of Personal Jurisdiction

1. Relevant Standard

When deciding a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, "[o]nce a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). To carry this burden, the plaintiff must "'establish[] with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Petrucelli v. Rusin*, 642 F. App'x 108, 109 (3d Cir. 2016) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) (internal citation omitted).

Under the Due Process Clause, there are two types of personal jurisdiction: general or specific. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 582 U.S. 255, 262 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-59 (2021). General jurisdiction permits a court to hear all claims against a resident individual, but specific jurisdiction is confined to claims connected to a non-resident defendant's activities in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). *See also Daimler*, 571 U.S. 117; *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402

(2017); *Bristol-Myers*, 137 S. Ct. at 1781.  Because Algoma is not a resident defendant, only a specific jurisdiction analysis applies.

        2.  Analysis

Algoma argues that the Court does not have specific jurisdiction over it, because U.S. Steel's claims do not relate to any activity in Pennsylvania.  Algoma also maintains that the Court cannot maintain jurisdiction merely because U.S. Steel is a Pennsylvania company or because the Contract is governed by Pennsylvania law.  Algoma further contends that neither party's contractual obligations were performed in Pennsylvania in that the pellets to fulfill the orders under the Contract were shipped from Minnesota and that during the later timeframe of performance, U.S. Steel directed Algoma to remit funds to U.S. Steel's bank account located in Illinois.

U.S. Steel asserts that this Court has specific personal jurisdiction over Algoma for a multitude of reasons.  U.S. Steel specifically argues that 1) Algoma's senior executives came to Pittsburgh and collaborated with U.S. Steel employees in Pittsburgh to negotiate the Contract; 2) the Contract contains an express agreement to arbitrate disputes in Pittsburgh and an express agreement to apply Pennsylvania law to construe and enforce the Contract; 3) Algoma communicated about the management and execution of the Contract with U.S. Steel employees located in Pittsburgh; 4) Algoma paid invoices to U.S. Steel's bank in Pittsburgh; and 5) Algoma sent its breach and repudiation of the Contract letter to Pittsburgh.  Thus, U.S. Steel contends that Algoma had the requisite "minimum contacts" to "purposely avail" itself of specific personal jurisdiction in Pennsylvania.

The Court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the state where the Court sits. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir.

2001). Pennsylvania law permits the exercise of "specific personal jurisdiction over a nonresident defendant … 'to the fullest extent allowed under the Constitution of the United States' " such that personal jurisdiction "may be based on the most minimum contact with this Commonwealth allowed under the Constitution." *Consol Pennsylvania Coal Co., LLC*, 2023 WL 1862771, at \*3 (quoting 42 Pa.C.S. § 5322(b)). "Specific jurisdiction exists when the 'plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum.'" *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186–87 (3d Cir. 2024). The Third Circuit provides for specific jurisdiction analysis, which focuses upon "the relationship among the defendant, the forum, and the litigation." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). The three parts of such analysis consider whether: (1) the defendant "purposefully directed its activities at the forum"; (2) the case "arise[s] out of or relate[s] to at least one of those activities"; and, assuming that the first two requirements are met, then (3) "whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *Id.* (cleaned up); *O'Connor*, 496 F.3d at 317 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The first two parts correspond to the "minimum contacts" requirement, and the last part, as is evident, pertains to traditional notions of fair play and substantial justice. *Stewart v. Boeing Co.*, No. CV 21-938, 2022 WL 4082113, at \*2 (W.D. Pa. Sept. 6, 2022).

In the context of contract formation, merely contracting with a resident of a forum state "is not, by itself, sufficient to justify personal jurisdiction over the nonresident," *id.* (quoting *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)), and "informational communications in furtherance of a contract between a resident and nonresident do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the nonresident defendant." *Id.* (quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass*

*Prod. Co.*, 75 F.3d 147, 152 (3d Cir. 1996)).  However, to determine whether personal

jurisdiction is appropriate with respect to a breach of contract claim, the Court "must consider

the totality of the circumstances, including the location and character of the contract

negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick*, 238

F.3d at 256.

Here, the totality of circumstances supports this Court's exercise of specific personal

jurisdiction over Algoma.  While no one factor is dispositive, there is an abundance of factors

that support specific jurisdiction is present, because Algoma's foothold in Pennsylvania under

these presenting circumstances is sufficient to meet Pennsylvania jurisdiction standards.  First,

Algoma employees traveled to Pennsylvania to gather information and to collaborate with U.S.

Steel about production of suitable pellets for the Contract at hand.  Thereafter, U.S. Steel, from

Pennsylvania, participated in contract negotiations with Algoma to reach terms for the Contract.

*See Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 152 (3d Cir. 2001) (finding specific jurisdiction

for in person visits where they establish efforts aimed at furthering a joint commercial

enterprise); *see Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482–83 (3d Cir.

1993) (directing telephone calls, communications, and other negotiations-related correspondence

into the forum were sufficient to confer jurisdiction).  Here, under either declaration, U.S. Steel's

declaration that negotiations for the Contract occurred with Algoma employees personally

present in Pittsburgh, Pennsylvania, or Algoma's declaration that Algoma's employee's were

personally present in Pennsylvania with U.S. Steel to investigate the feasibility of Algoma's use

of U.S. Steel supplied pellets, the in person Pennsylvania presence of Algoma employees was to

clearly pursue efforts towards furthering the joint commercial enterprise that resulted in the

Contract between U.S. Steel and Algoma.

Second, the Contract contains a choice-of-law and arbitration provision directing that all disputes are to be arbitrated in Pittsburgh, and that Pennsylvania law was to be applied to construe and enforce the Contract. *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308 (W.D. Pa. 2020) (finding Third Circuit and sister circuit support that an agreement to arbitrate in a specific location can be a regarded as a waiver of objections to a judicial jurisdiction in said location).  The Contract, which provides for Arbitration to occur in Pittsburgh, Pennsylvania and establishes the application of Pennsylvania law to the Contract, leads to a practical and logical conclusion that specific personal jurisdiction in Pennsylvania is appropriate.

Third, U.S. Steel and Alogma managed and executed the implementation of their five-year "course of dealing," through Pittsburgh, Pennsylvania. Throughout the Contract, Algoma directed its communications to U.S. Steel and U.S. Steel's employees in Pittsburgh, Pennsylvania.  *See Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (holding parties are subject to personal jurisdiction where they reach out beyond [their] state and create continuing relationships and obligations with citizens of another state); *Telespectrum Worldwide, Inc. v. MBNA Canada Bank*, CIV. A. 98-6292, 1999 WL 239112 (E.D. Pa. Apr. 16, 1999) (finding jurisdiction over Ontario defendant where "continuous contacts . . . related to the on-going implementation and performance of the services that defendant requested and plaintiff agreed to undertake" were directed into Pennsylvania).  Thus, such course of dealings support specific jurisdiction over Algoma lies in Pennsylvania.

Fourth, Algoma paid for a portion of subject goods through U.S. Steel's bank account in Pittsburgh.  *N. Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 691 (3d Cir. 1990) (holding payment into a forum state pursuant to a contract supports a finding of personal

jurisdiction). Further, in a later time frame, Algoma's payments were directed to an Illinois account; however, such payment by Algoma was done at the express direction from U.S. Steel's headquarters in Pittsburgh, Pennsylvania. Thus, the payment terms also support Algoma's conduct of business activities of this Contract in Pennsylvania to support jurisdiction over Algoma in Pennsylvania.

Taken in total, these factors weigh in favor of finding that this Court has specific jurisdiction over Algoma. Accordingly, Algoma's Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(2), will be denied.

B. Motion to Compel Arbitration

U.S. Steel argues that the parties have entered a valid agreement to arbitrate, and that the parties' dispute falls within their Contract's arbitration agreement. In particular, U.S. Steel asserts that, because the parties agreed to AAA arbitration, the arbitrators should determine the arbitrability of this case. Algoma maintains that U.S. Steel's motion is moot, because Algoma is actively participating in an arbitration as requested by U.S. Steel. Algoma also contends U.S. Steel's Motion to Compel Arbitration should be denied, because the arbitration provision has a "carve out" for equitable claims, and that its claim for equitable relief, filed in an Ontario, Canada court, is not subject to the arbitration provision.

"A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Generally, courts decide the question of arbitrability, except "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, ... a court possesses no power to decide the arbitrability

issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 139 S. Ct. 524, 530, 202 L.Ed.2d 480 (2019).

Here, the Contract incorporates AAA's "Commercial Arbitration Rules," which provide at Rule 7(a) that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including … the arbitrability of any claim or counterclaim." Algoma does not dispute the validity of the Contract. Algoma instead argues that the Contract endorses a jurisdictional bypass of the Contract's Arbitration provision through the Contract's "carve out" provision, which permits the parties to file for equitable relief in a court of competent jurisdiction (Section 17(c)). However, based upon the Contract's language, which incorporates AAA rules, said jurisdictional and associated arbitrability matters are for the parties' arbitrators to decide, including the "carve out" provision. Therefore, U.S. Steel's Motion to Compel is well-taken and will be granted.

Accordingly, U.S. Steel's Motion to Compel Arbitration will be granted, and the parties are directed to proceed with their pending arbitration. The other claims asserted before this Court will be stayed in all other respects, pending further order of court or completion of arbitration proceedings.

C.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Because the Court will be granting U.S. Steel's Motion to Compel Arbitration, Algoma's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) will be denied as moot.

D.  Motion to Stay Based Upon International Comity

Finally, in the alternative, Algoma moves for a stay of this action based upon its first-filed, parallel action in Canada.

Principles of international comity permit a district court, in its discretion, to dismiss or stay a case over which it has subject matter jurisdiction in deference to the laws and interests of

another foreign country. *Lexington Ins. Co. v. Forrest,* 263 F.Supp.2d 986, 1002

(E.D.Pa.2003); *Paraschos v. YBM Magnex Int'l, Inc.,* 130 F.Supp.2d 642, 645 (E.D.Pa.2000).

The Third Circuit has stated that "[c]omity should be withheld only when its acceptance would

be contrary or prejudicial to the interest of the nation called upon to give it effect." *Philadelphia*

*Gear Corp. v. Philadelphia Gear de Mexico,* 44 F.3d 187, 191 (3d Cir.1994) *cited*

*in Paraschos,* 130 F.Supp.2d at 645. Comity, therefore, is not extended to foreign proceedings

where doing so would be contrary to the public policy of the United States. *Philadelphia Gear*

*Corp.,* 44 F.3d at 191; *Paraschos,* 130 F.Supp.2d at 645 (citation omitted).

This Court notes that the express language of the Contract provides for the availability of

equitable redress before, during, and after arbitration. As such, having found that it has personal

jurisdiction over Algoma, and that, pursuant to the parties' Contract, the arbitrability of this

matter belongs to the AAA Arbitration panel, there is no compelling reason to defer this case or

the Arbitration because of Algoma's equity filing in Canada.  Further, principles of international

comity would seemingly not apply, where, as per the express terms of the Contract, any dispute

under the Contract shall be determined pursuant to Pennsylvania law. Thus, it follows that there

is no Canadian interest in the adjudication of a contract under Pennsylvania law, to support the

issuance of stay in this case.

Accordingly, Algoma's Motion to Stay, based upon international comity, will be denied.

A separate order will follow.

DATED this 12th day of December, 2025.

BY THE COURT:

Marilyn J. Horan
United States District Judge

11